**CONSTRUCTO TEMPS, INC.
and Workers' Compensation
Security Fund, Petitioners**

v.

**WORKERS' COMPENSATION
APPEAL BOARD (TEN-
NANT), Respondent.**

Commonwealth Court of Pennsylvania.

Argued May 10, 2006.
Decided Sept. 8, 2006.

Karen M. Balaban, Harrisburg, for petitioner.

Gary D. Monaghan, Uniontown, for respondent.

BEFORE: McGINLEY, Judge, and SMITH–RIBNER, Judge, and PELLEGRINI, Judge, and FRIEDMAN, Judge, and LEADBETTER, Judge, and COHN JUBELIRER, Judge, and LEAVITT, Judge.

OPINION BY Judge COHN JUBELIRER.

Constructo Temps, Inc. (Employer) and the Workers' Compensation Security Fund[1] (Security Fund) (together, Petitioners) petition for review of the July 18, 2005 order of the Workers' Compensation Appeal Board (Board), which affirmed, as modified, the decision of a workers' compensation judge (WCJ) to assess a twenty percent penalty against Petitioners under the Workers' Compensation Act (Act),[2] for failure to pay for some of Gregory Tennant's (Claimant) medical treatments.

Claimant sustained a work-related injury to his right knee on March 6, 2000, and started to receive payments from Employer pursuant to a notice of compensation payable. Employer's workers' compensation insurance coverage was provided by Reliance Insurance Company (Reliance); however, this Court placed Reliance into liquidation by order dated October 3, 2001. As successor in interest to Reliance, the Security Fund became responsible for administering and paying all of Pennsylvania's eligible workers' compensation claims related to periods of coverage provided by Reliance prior to its date of liquidation.[3]

The WCJ Decision in this case involved a consolidation of three petitions. First, on March 17, 2003, Petitioners filed a termination petition alleging that Claimant was fully recovered from his work-related injury as of December 9, 2002;[4] Claimant filed a timely answer denying the allegations. (WCJ Findings of Fact dated 11/29/04 (FOF), ¶ 1, 2.) Second, on March 26, 2004, Claimant filed a penalty petition against Petitioners, alleging that they had not paid for various work-related medical expenses; Petitioners filed a timely answer denying the allegations. (FOF ¶ 3, 4.) Third, on June 15, 2004, Claimant filed a review petition alleging that Petitioners had refused to pay for reasonable and necessary work-related medical treatment; Petitioners filed a timely answer denying the allegations. (FOF ¶ 5, 6.) Both the Claimant and Petitioners presented evidence before the WCJ in support of these consolidated petitions.

After considering all of the evidence, the WCJ denied Petitioners' termination petition and granted Claimant's penalty and review petitions in part. Relevant to the

---

1. The Security Fund is established under the Pennsylvania Workers' Compensation Security Fund Act, Act of July 1, 1937, P.L. 2532, *as amended,* 77 P.S. §§ 1051–1066.

2. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4, 2501–2626.

3. Inservco Insurance Services, Inc. was the Security Fund's third party administrator responsible for administering Claimant's claim.

4. Petitioners requested a supersedeas; however, the WCJ denied that request. (WCJ Findings of Fact dated 11/29/04 (FOF), ¶¶ 1, 7.)

issues now before this Court are those portions of the WCJ's order assessing a penalty against "Employer/Insurance Carrier" in an amount equal to twenty percent of the re-priced value of the outstanding medical bills relating to treatment rendered to Claimant by Craig Bennett, M.D., at the University of Pittsburgh Medical Center (UPMC) and by Richard M. Vaglienti, M.D., at HealthSouth.[5] (WCJ Order dated 11/29/04; *see* FOF ¶ 18; WCJ's Conclusions of Law dated 11/29/04 ¶¶ 4, 7.) The WCJ found that there was no acceptable reason for Petitioners' failure to pay the bills related to this treatment. (FOF ¶ 18.)[6] Accordingly, the WCJ ordered "[t]he Employer/Insurance Carrier is assessed a twenty (20%) percent penalty for its failure to pay in a timely fashion the medical expenses incurred by Claimant...."

Petitioners appealed to the Board, arguing that neither Employer nor the Security Fund can be liable for penalties here. The Board disagreed, and affirmed the penalty award. The Board reasoned that:

> We believe that Defendant's arguments would lead to an absurd result. At some point, a decision was made to deny the payments to Dr. Bennett and Dr. Vaglienti. To allow Defendant to disclaim its responsibility for the decisions it made would frustrate the "humanitarian purposes" of the Workers' Compensation Act. *ANR Freight System v. Workers' Compensation Appeal Board (Bursick)*, 728 A.2d 1015 (Pa. Cmwlth.1999). We note that employers and insurance companies are deemed to be a "single complex entity". *Manolovich v. Workers' Compensation Appeal Board (Kay Jewelers, Inc.)*, 694 A.2d 405 (Pa.Cmwlth.1997). Both parties agree that the Workers' Compensation Security Fund was established to provide benefits to injured workers when the insurance company on the risk became insolvent. We believe that, since the original carrier became insolvent, its successor in interest would become the Workers' Compensation Security Fund and that Inservco Insurance Services, as its Third Party Administrator, would become liable for any penalties incurred by failure to make timely payment of the medical treatments rendered to Claimant.... No error of law was committed.

(Bd. Op. dated 7/18/05 at 6.)[7]

Petitioners have now appealed to this Court arguing that when the Act's defini-

---

**5.** The WCJ's order stated that payment of the bills would be subject to Act 44 re-pricing. *See* Section 306(f.1) of the Act, 77 P.S. § 531.

**6.** Specifically, the treatments rendered to Claimant by Drs. Vaglienti and Bennett were injections into Claimant's right knee, and Claimant's work-related injury was a torn ACL of the right knee and subsequent ACL reconstruction. (FOF ¶¶ 8(f), 8(g), 10.) The WCJ found that there was nothing in the record to support Petitioners' position that the injections were related to a non-work-related, surgical procedure performed on Claimant's right knee in 1990.

**7.** The WCJ clearly indicated that it was holding "Employer/Insurance Carrier" responsible for the penalties. The Board's decision is less clear. The quoted paragraph refers to Defendant, which, the caption of the Board's decision identifies as the Employer. However, the rationale at the end of the quoted paragraph suggests that the Board was holding the Security Fund, itself, responsible for the payments.

The Board's Order offers no further guidance, limiting itself to modifying the WCJ's Conclusion of Law No. 4 "to reflect [e]mployer's liability for the payment of medical treatments rendered to Claimant ..." rather than the payment of medical *expenses*. (Bd. Op. dated 7/18/05 at 6.) This modification was made in response to another argument made before the Board that the Board characterized as puzzling. The argument was that:

> An employer is never liable for all reasonable, necessary and causally related medical *expenses*. Rather Section 306(f.2)(1)(i)

tions for insurer and employer are applied in the Act's penalty provision in Section 435(d)(i), 77 P.S. § 991(d)(i), neither the Security Fund, nor the Employer, are entities subject to the penalties. We address these arguments in turn.[8]

■■■ As Petitioners raise purely legal issues, our standard of review is limited to determining whether the Board committed an error of law. *Luvine v. Workers' Compensation Appeal Board (Erisco Indus.),* 881 A.2d 72 (Pa.Cmwlth.2005); *see* Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. Additionally, the assessment of penalties is discretionary, and this Court may overturn a penalty only when the WCJ has abused his or her discretion. *Fearon v. Workers' Compensation Appeal Board (Borough of Ashland),* 827 A.2d 539, 542 (Pa.Cmwlth.2003). "An abuse of discretion is not merely an error of judgment but occurs, *inter alia* when the law is misapplied in reaching a conclusion." *Id.*

As background, we first discuss the Pennsylvania Workers' Compensation Security Fund Act (Security Fund Act), then the Act's penalty provision at issue, after which we address Petitioners' arguments.

*Security Fund Act*

The Security Fund Act establishes the Security Fund:

> for the purpose of assuring to persons entitled thereto the compensation provided by the Workmen's Compensation Law for employments insured in insolvent stock companies; insolvent mutual carriers; insolvent reciprocal exchanges; or the State Workmen's Insurance Fund.

77 P.S. § 1053. The Security Fund Act provides that the Security Fund:

> shall be applicable to the payment of valid claims for compensation heretofore or hereafter made pursuant to the Workmen's Compensation Law and remaining unpaid, in whole or in part, by reason of the default, after the effective date of this act of an insolvent stock company; insolvent mutual carrier or insolvent reciprocal exchange or the insolvent State Workmen's Insurance Fund.

77 P.S. § 1053. The Security Fund proceeds are established by:

> contributions received and paid into the fund by stock companies, mutual carriers and reciprocal exchanges as herein

---

of the Act requires that an Employer must *provide for the payment* for all reasonable and necessary medical treatment that is causally related to a work injury. 77 P.S. § 531(1). Employer is not liable for the *treatment* rendered to the [C]laimant.... (Bd. Op. dated 7/16/05 at 5.) The Board noted that this "argument appears to be one of semantics. We understand that when an employer is held liable for treatment it means that the employer is liable for the payment of the medical treatment at issue. To the extent that this is unclear to Defendant, we will modify the [WCJ's decision]." (Bd. Op. dated 7/16/05 at 5.)

For purposes of our review, we read the Board's decision to hold, consistent with the WCJ's decision, the "Employer/Insurer" responsible for the penalty.

8. By Per Curiam Order of this Court dated November 21, 2005, this case was submitted on briefs for decision by a panel of this Court. The briefs raised the two issues of whether: (1) the Security Fund was subject to penalties; and (2) Employer was subject to penalties. Subsequently, the Court scheduled the case for en banc argument in May 2006, and directed the parties to be prepared to address the following specific issue: *"Assuming arguendo* that there is no statutory authority to impose penalties upon the [Security Fund], may penalties be imposed directly upon Employer whose insurer is in liquidation." (Order of President Judge James Gardner Colins 3/3/06.)

defined, all property and securities acquired by and through the use of moneys belonging to the fund, and of interest earned upon moneys deposited or invested, as herein provided. 77 P.S. § 1053. Additionally, the Security Fund Act provides that the "[e]xpenses of administration ... shall be paid from the" Security Fund. 77 P.S. § 1053.

The Insurance Commissioner (Commissioner) is responsible for administering the Security Fund. 77 P.S. §§ 1051, 1053. The Security Fund Act establishes procedures for the Commissioner to make payments of claims already reduced to an award. 77 P.S. § 1061(1).[9] Of particular relevance for the within proceeding, Sections 12 and 13 of the Security Fund Act establish procedures for the Commissioner to review and address pending claims. 77 P.S. §§ 1062, 1063.

Section 12 of the Security Fund Act requires the insolvent insurer to provide notice to the Board who, in turn, provides notice to the Commissioner:

(a) of all claims for compensation pending or thereafter made against every employer insured by such insolvent carrier, or against such insolvent carrier; (b) of all unpaid or continuing awards made upon claims for compensation prior to or after the date of such notice from the commissioner; and (c) of all appeals from or applications for modification, recision [sic] or review of such awards.

77 P.S. § 1062. Section 13 requires the Commissioner to be a party in interest in cases involving existing claims, and authorizes the Commissioner to defend against any claim or prosecute any appeal "against an employer insured by an insolvent carrier, or against an insolvent carrier." 77 P.S. § 1063.[10]

In addition to providing the Commissioner with broad authority to litigate pending claims brought against an employer or its insolvent insurer, the Security Fund Act explicitly proscribes the Commissioner's ability to seek from employer payment of amounts spent from the Security Fund. 77 P.S. § 1061(2) (stating that "[p]ayment of an award from the fund shall not give the commissioner of such fund any right of recovery against the employer.") As if to underscore this point, subsection (4) of 77 P.S. § 1061(2), which defines the subrogation rights of the Insurance Commissioner for the Security Fund, lists several persons from whom the

---

**9.** The Security Fund Act requires the Security Fund to pay *valid* claims that have been in default for sixty days. 77 P.S. § 1061(1). It establishes a procedure for seeking payment of claims by stating that, "[a]ny person in interest may file with the commissioner an application for payment of compensation," 77 P.S. § 1061(1), and that, "[a] certified copy of the award must accompany the application." *Id.*

**10.** This section provides that:

The commissioner, or a representative committee of interested carriers which the commissioner may from time to time appoint, or both, *may investigate and defend* before the Workmen's Compensation Board or any court, *any and all claims for compensation against an employer insured by an*

*insolvent carrier,* or against an insolvent carrier, and *may prosecute any pending appeal from, or may appeal from, or make application for modification, recision [sic] review of any agreement, award or decision against any such employer or carrier.* Until all such claims for compensation are closed and all awards are paid, the commissioner, as administrator of the funds, *shall be a party* in interest in respect to all such claims, agreements and awards. For the purposes of this section, the commissioner shall have exclusive power to select and employ such clerks and assistants as may be deemed necessary, and to fix and determine their powers and duties.

77 P.S. § 1063 (emphasis added).

Security Fund can seek payment, but, repeating subsection 2's proscription, specifically excludes employers:

The commissioner shall be entitled to recover the sum of all liabilities of such insolvent carrier assumed by the fund from such carrier, its receiver, liquidator, rehabilitator, conservator or trustee in bankruptcy and all others, *except employers*, liable under any of the terms of the Workmen's Compensation Law, and may prosecute an action or proceedings therefore.

77 P.S. § 1061(4) (emphasis added). However, the Security Fund Act does give employer the opportunity to seek subrogation from the Fund for any amounts it *voluntarily* pays to claimant. 77 P.S. § 1061(3)(providing that "[a]n employer *may* pay an award or a part thereof in advance of payment from the fund and shall thereupon be subrogated to the rights of the employe or other party in interest against such fund to the extent of the amount so paid.")(emphasis added).

*Penalties under the Act*

Section 435 of the Act authorizes the imposition of penalties on insurers and employers for failing to comply with the Act:

(d) The department, the board, or any court which may hear any proceedings brought under this act shall have the power to impose penalties as provided herein for violations of the provisions of this act or such rules and regulations or rules of procedure:

(i) Employers and insurers may be penalized a sum not exceeding ten per centum of the amount awarded and interest accrued and payable: Provided, however, That such penalty may be increased to fifty per centum in cases of unreasonable or excessive delays. Such penalty

shall be payable to the same persons to whom the compensation is payable.

77 P.S. § 991(d)(i). The Act further provides that penalties are not workers' compensation benefits. 77 P.S. § 991(d)(ii) (providing that "[a]ny penalty or interest provided for anywhere in this act *shall not be considered as compensation* for the purposes of any limitation on the total amount of compensation payable which is set forth in this act.") (emphasis added).

Our Supreme Court has recently cautioned that, "[u]nder the statute, the power to assess a penalty is dependent upon [a] party violating the Act or pertinent rules and regulations." *Snizaski v. Workers' Compensation Appeal Board (Rox Coal Co.)*, 586 Pa. 146, 161, 891 A.2d 1267, 1276 (2006). The Supreme Court noted that "[p]enalties should be tied to some discernible and avoidable wrongful conduct." *Snizaski*, 586 Pa. at 164, 891 A.2d at 1278.

This Court's own precedent similarly links the imposition of penalties with conduct, finding that "the Act permits the imposition of penalties to give the Board the power to assure compliance with the Act." *Palmer v. Workers' Compensation Appeal Board (City of Philadelphia)*, 850 A.2d 72, 78 (Pa.Cmwlth.2004). Claimants are not *automatically entitled* to penalties for non-compliance—the award of penalties is a discretionary matter lying within the province of the WCJ. *Westinghouse Elec. Corp. v. Workers' Compensation Appeal Board (Weaver)*, 823 A.2d 209, 213 (Pa.Cmwlth.2003).

█ Penalties, thus, do not work to make the claimant whole—they are not workers' compensation benefits them-

selves—but are to be used against a party that is not complying with the applicable statutes and regulations as a means of bringing that party into compliance, and to penalize avoidable wrongful conduct.

*Imposing Penalties against the Security Fund*

Petitioners first argue that the Act does not authorize the imposition of penalties against the Security Fund because the Security Fund is not an "insurer" under the Act.[11] Petitioners draw support for their position from our decision in *Chiconella v. Workers' Compensation Appeal Board (Century Steel Erectors, Inc.)*, 845 A.2d 932 (Pa.Cmwlth.2004), which involved the interpretation of the term "insurer."

The Act's definition of "insurer" identifies only one specific governmental fund as being an insurer—the State Workmen's Insurance Fund.[12] The definition provides that:

> The terms **"insurer"** and **"carrier,"** when used in this article, *shall mean the State Workmen's Insurance Fund or other insurance carrier* which has insured the employer's liability under this act, or the employer in cases of self-insurance.

77 P.S. § 701 (italicized emphasis added). This Court, in *Luvine*, has recently addressed whether the Security Fund is an insurer under this definition, and concluded that, because the Security Fund is not specifically identified in the "insurer" definition, it was not an insurer and, therefore, was not subject to penalties. *Luvine* relied extensively on our analysis in *Chiconella.*

In *Chiconella*, this Court applied the principle of *expressio unius est exclusio alterius* (inclusion of certain items in a statute excludes those items which have been omitted) to hold that the Subsequent Injury Fund[13] was not subject to penalties for a violation of the Act. In doing so, we looked at the language of the Act, and noted that the Subsequent Injury Fund is not specifically included in the definition of the term "insurer" in the Act, which specifies only the State Workmen's Insurance Fund. 77 P.S. § 701. We reasoned that, because Section 401 of the Act specifically provides that the definition of "insurer" includes the State Workers' Insurance Fund, but does not mention the Subsequent Injury Fund, "the Legislature did not intend for the Subsequent Injury Fund to be treated like an insurer in proceed-

---

11. Section 435(d)(i) of the Act authorizes penalties against "[e]mployers and insurers" for violations of the Act. Section 435(d)(i) of the Act, added by Section 3 of the Act of February 8, 1972, P.L. 25, *as amended*, 77 P.S. § 991(d)(i).

12. The definition for insurer is contained in Article I of the Act ("Interpretation and Definitions") and provides that:

> "**Insurer**" means an entity subject to the act of May 17, 1921 (P.L. 682, No. 284), known as "The Insurance Company Law of 1921," including the State Workmen's Insurance Fund, with which an employer has insured liability under this act pursuant to section 305 or a self-insured employer or fund ex-

empted by the Department of Labor and Industry pursuant to section 305.

77 P.S. § 29 (footnote omitted).

13. This Subsequent Injury Fund is established in Section 306.1 of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, added by Section 1 of the Act of May 29, 1945, P.L. 1186. It provides that an individual who suffers permanent partial disability through the loss of an appendage or eye, and receives compensation for that injury, but who sustains a subsequent injury through the loss of another appendage or eye, which additional injury leads to the individual becoming permanently disabled, is entitled to permanent disability payments that come from the Subsequent Injury Fund.

ings under the Act." *Chiconella,* 845 A.2d at 935.

After the parties filed their briefs in this case, we issued the *Luvine* decision, which applied the rationale in *Chiconella,* concluding that, like the Subsequent Injury Fund, the Security Fund is also not subject to penalties.

In *Luvine,* the claimant sought benefits from the employer for a work-place injury. The employer insured its liability with an unnamed insurance carrier. The insurance carrier became insolvent and, by operation of law, the Security Fund "succeeded in interest to employer's insolvent insurance carrier and was substituted for the insurance carrier in all subsequent proceedings." *Luvine,* 881 A.2d at 73. The WCJ and the Board initially denied the claimant benefits, but this Court, on appeal, reversed and awarded benefits. Approximately one month after this Court's Order, the claimant filed a penalty petition against the Security Fund, arguing that thirty days had passed since the award of benefits, benefits had not been paid during that time, and that, under Section 435 of the Act, the claimant was entitled to benefits.[14] The WCJ granted the penalty petition against the Security Fund, and imposed a ten percent penalty as a result of the delay. The WCJ also awarded the claimant counsel fees against the Security Fund because it was without a reasonable basis for contesting the petition. On appeal, the Board reversed the WCJ's decision. In doing so, it relied on the *Chiconella* decision. The claimant appealed to this Court and we affirmed the Board.

In *Luvine* we analogized the Security Fund to the Subsequent Injury Fund in *Chiconella,* concluding that, like the Subsequent Injury Fund, the Security Fund is a statutorily-created government entity that pays workers' compensation benefits, but is not mentioned in Section 401 of the Act. Accordingly, we held that the Legislature did not intend to include the Security Fund within the meaning of "insurer" under Section 401 of the Act. That holding is controlling and must be applied to this case.

Accordingly, we apply the *Luvine* holding here and, therefore, conclude that the imposition of penalties against the Security Fund was in error.

*Imposing Penalties on Employer*

■ Petitioners also argue that an employer, who is fully insured in its liability, should not be assessed a penalty for nonpayment or untimely payments resulting solely from the conduct of the Security Fund. Section 401 of the Act defines "employer" as:

> The term **"employer,"** when used in this article, shall mean the employer as defined in article one of this act, or his duly authorized agent, or *his insurer if such insurer has assumed the employer's liability* or the fund if the employer be insured therein.

77 P.S. § 701 (italicized emphasis added).

In this case, relying on this definition, Employer argues that it met its obligation to provide payment for Claimant's medical treatment by contracting with Reliance for Reliance to assume direct responsibility for the ongoing payment of Claimant's medical bills. Petitioners note that, "[u]n-

---

14. It is not entirely clear, but language in the opinion suggests that the penalty petition may have also included a claim for penalties against the claimant's employer. The discussion of this Court, however, only indicated that the WCJ assessed penalties against the Security Fund, and similarly, our analysis focused entirely on the legality of imposing penalties on the Security Fund. Therefore, our opinion in *Luvine* did not address whether penalties may be imposed on employer.

der the standard contractual terms of workers' compensation insurance policies, the insurer assumes the employer's liability for the payment of medical expenses causally related to the insured work injury." (Pet'r Br. at 12.) Employer argues that, with Reliance being placed into liquidation by this Court, Reliance's responsibility for paying the workers' compensation obligations passed to the Security Fund. Thus, Employer argues that "[u]nder the definition of 'employer' in 77 P.S. § 701, since Employer insured the risk, which was subsequently assumed by the Security Fund, no penalty can be assessed against Employer in this case." (Pet'r Br. at 13.)

In response, Claimant contends that Petitioners' argument in this second issue, that Employer was insured with Reliance for the March 6, 2000 injury, is inconsistent with Petitioners' argument on the first issue that the Security Fund was not an insurer. Claimant notes that in 2002 and 2003, when Employer was obligated to pay medical benefits, Reliance was in liquidation such that Reliance could not have been Employer's "insurer." In that instance, "the Security Fund was either the Defendant/Employer's insurer or the Defendant/Employer was not insured. If the Defendant/Employer had no insurance, then it is directly responsible for any and all penalties levied against it." (Claimant Br. at 6.)

█ To determine whether Employer should be liable for penalties, we begin by examining the compensation provisions of the Act, found in Article III, which is titled "Liability and Compensation." Within this article, Section 301(a) establishes that "[e]very employer shall be liable for compensation for personal injury to, or for death of each employe, by an injury in the course of his employment" subject to certain limitations relating to the manner of injury that are also described in this section. 77 P.S. § 431. Section 303 of the Act, titled "Exclusivity of liability; third-party liability,"[15] also within Article III, further provides that "[t]he liability of an employer under this act shall be exclusive and in place of any and all other liability to such employes ..." such that an injured employee may only bring a claim against his employer, and not any other of his employer's employees. 77 P.S. § 481 (providing that, in addition to receiving appropriate workers' compensation benefits, an employee injured or killed by a third party during his course of employment may bring suit against the third party). The first few provisions of Article III of the Act, thus, impose exclusive liability on the employer for employee injuries sustained in the workplace.

Section 305 of the Act establishes two methods under which an employer can meet its liability to insure its employees under the Act: (1) self insurance; or (2) contracting with an insurance company. 77 P.S. § 501(a)(1). The regulations define "self-insurance" as "[t]he privilege granted to an employer which has been exempted by the Bureau from insuring its liability under Section 305 of the act. ...." 34 Pa.Code § 125.2. Such self-insurers are required to meet certain other requirements. *See, e.g.,* Section 305(a)(2) of the Act, 77 P.S. § 501; 34 Pa.Code Ch. 125 (Workers' Compensation Self–Insurance).

Employers that have not sought to "insure [their] liability" through self-insurance are required to "insure the payment of compensation in the State Workmen's Insurance Fund, or in any insurance company or mutual association or company, authorized to insure such liability in this

---

**15.** The title given this section in Purdon's Statutes reads "Exclusiveness of remedy; actions by and against third party, contract indemnifying third party."

Commonwealth . . . ." 77 P.S. § 501(a)(1). Once an employer insures its liability with an insurance company, Section 305 provides that "[s]uch insurer *shall assume the employer's liability* hereunder . . . ." 77 P.S. § 501(a)(1) (emphasis added).[16]

This inference that the insurer assumes employer's liability is also supported by the language in the applicable regulations. In particular, Chapter 121 of the regulations contains the "General Provisions" covering various procedures related to the identification and payment of injuries. The first subparagraph of the first section of this chapter notes that "[t]he term 'employer' as used in this chapter means, when applicable, the insurer thereof and a self-insured employer." 34 Pa.Code § 121.1(a). The regulations, thus, treat the party responsible for compliance with the procedures set forth in the chapter as being the employer, if self-insured, *or* the insurer, if the employer is not self-insured.

In this case, there is no dispute that Employer is not self-insured, but had insured its liability through means of an insurance carrier, Reliance. By doing so, under both the Act and the regulations implementing it, the insurance carrier, Reliance, "assumed the liability for the Employer."

Applying the general principles from our Supreme Court for assessing penalties in the workers' compensation setting, there is no indication in this case that Employer

has engaged in any "avoidable wrongful conduct," or that imposing penalties will ensure compliance with the statutes and regulations. *Snizaski.* In fact, Employer complied with the Act, although, through no fault of Employer, the licensed insurance company with whom it contracted to assume its liability went into liquidation. As noted above, Employer met its statutory obligation by insuring its liability. By doing so, under operation of law, the insuring company assumed responsibility for processing and paying claims against Employer. Also by operation of law, upon the insolvency of Reliance, the Security Fund assumed responsibility for the obligations of Reliance. Nothing in the facts of this case suggests that any part of the Security Fund's delay in paying Claimant is attributable to Employer. Imposition of penalties on Employer amounts to an attempt to penalize into compliance an already compliant employer—it, thus, would not serve its intended purpose of inducing non-compliant employers into compliance, and penalizing avoidable wrongful conduct.[17]

Additional support is found in the language of the Security Fund Act. The statutory language places responsibility on the Commissioner to defend and appeal claims brought against "an employer insured by an insolvent carrier, or against an insolvent carrier" while, simultaneously, precluding the Commissioner from seeking payment from the employer. The clear import of this language is consistent with

---

**16.** Section 305(a)(1) of the Act provides, in pertinent part, that:

> Every employer liable under this act to pay compensation shall insure the payment of compensation in the State Workmen's Insurance Fund, *or in any insurance company, or mutual association or company, authorized to insure such liability* in this Commonwealth, unless such employer shall be exempted by the department from such insurance. *Such insurer shall assume the employer's liability* hereunder and shall

> be entitled to all of the employer's immunities and protection hereunder.
>
> 77 P.S. § 501(a)(1)(emphasis added).

**17.** At argument, Claimant stated that liability would be appropriate based on the alleged control Employer maintained over an insurer's processing and payment of workers' compensation claims. However, there is nothing to suggest that an employer is able to exercise any control over the Security Fund's payment of claims, an entity with which Employer has *no* contractual relationship.

the Act, providing for insurers to "assume" the liability of the Employer.[18]

Additionally, as noted earlier, the Security Fund Act notes that an employer "*may* pay an award and ... shall thereupon be subrogated to the rights of the employe ... from the fund...." 77 P.S. § 1061(3)(emphasis added). The Legisla-

ture used the permissive "may" and did not use language that would *require* the employer to make such payment. This is consistent with the conclusion that the Security Fund assumes the responsibility for payment from an insolvent insurer.[19]

Accordingly, we conclude that, just as the actual employer is not liable for pay-

18. The Board, in its decision, relied in part on our statement in *Manolovich v. Workers' Compensation Appeal Board (Kay Jewelers, Inc.)*, 694 A.2d at 408, that employers and insurance companies are deemed to be a "single complex entity." However, *Manolovich* is distinguishable from this case because *Manolovich* did not involve the Security Fund but, instead, involved an insurance company. The relationship between an insurance company and the employer which contracted with and makes payment to that insurance company, is very different from the relationship between the Security Fund and an employer, since the employer has not contracted with, or made payments to, the Security Fund. Moreover, we agree with Petitioners that, because the Security Fund is not included in the definition of "insurer" in the Act, the concept of a "single complex entity" between an insurer and employer does not apply to the Security Fund and an employer.

19. The Concurring and Dissenting Opinion relies on *Twyman v. Workers' Compensation Appeal Board (Pennsylvania Department of Transportation)*, 720 A.2d 780 (Pa.Cmwlth. 1998), to argue that employer is responsible for payment of reasonable medical expenses such that, if the insurer with which it contracted fails to timely make such payments, employer may be penalized for the delay.

In *Twyman*, this Court focused on the language in what is now Section 306(f.1) that an "employer *shall* provide payment [for medical services] as and when needed." 77 P.S. § 531(1)(i) (emphasis added); *see also Twyman*, 720 A.2d at 786. As noted in the *Twyman* decision and in the Concurring and Dissenting Opinion in this case, the specific section number of the Act and the particulars of the language have changed since *Twyman* but the general portion of the language quoted above was applicable at the time of *Twyman* and remains in the present section. *Twyman*, 720 A.2d at 784 n. 7. In *Twyman*, this Court concluded that, based on this lan-

guage, employer was responsible for payment of penalties arising from delays in the employer's insurance carrier's payment of employee's medical services. *Id.* at 786–87.

Although not specifically referencing the "single complex entity" concept discussed in *Manolovich*, the concept underlies our analysis in *Twyman*. This Court, in explaining its rationale in *Twyman*, noted that an employer "cannot escape its duty of timely payment by using 'confusion' of **its own** insurance carrier" and that employer is not shielded from responsibility while "its insurer and administrator solve their internal organizational problem regarding responsibility for payment of an injured employee's medical bills." 720 A.2d at 786–87 (emphasis added).

As discussed earlier, the relationship of an employer with *its* carrier is qualitatively different than the relationship of an employer with the Security Fund. An employer's relationship with its carrier is one of choice, while its relationship with the Security Fund is an involuntary one, made by operation of law. Given this difference, it is perhaps not surprising that the language of the Security Fund Act directs responsibility for payment of claims to the Security Fund, seemingly away from the employer:

(1) A valid claim for compensation or installments thereof, heretofore or hereafter made pursuant to the Workmen's Compensation Law, as defined herein, which has remained or shall remain due and unpaid for sixty days by reason of default, after the effective date of this act, by an insolvent carrier, *shall be paid from the fund* in the manner provided in this act.

* * * *

(3) *An employer may* pay an award or a part thereof in advance of payment from the fund and shall thereupon be subrogated to the rights of the employe or other party in interest against such fund to the extent of the amount so paid.

(4) The commissioner shall be entitled to recover the sum of all liabilities of such

ment of compensation, it is also not liable for payment of penalties *due to the conduct* of the Security Fund in handling or processing the claim.[20]

This opinion does not hold that an employer cannot, under any circumstances, be required to pay penalties once it has obtained insurance, as the Concurring and Dissenting Opinion states. We hold only that, as our Pennsylvania Supreme Court has held that the "power to assess a penalty is dependent upon [a party] violating the Act or pertinent rules and regulations" and is to "be tied to some discernible and

avoidable wrongful conduct," *Snizaski*, 586 Pa. at 164, 891 A.2d at 1276, 1278, an employer, which may be penalized for its own "discernible and avoidable wrongful conduct," cannot be penalized vicariously for conduct properly attributable to the Security Fund.

Under the applicable standard of review, because we conclude that the Act was misapplied in awarding penalties to Claimant, we reverse the Board's order.

### ORDER

**NOW,** September 8, 2006, the order of the Workers' Compensation Appeal Board

---

insolvent carrier assumed by the fund from such carrier, its receiver, liquidator, rehabilitator, conservator or trustee in bankruptcy and all others, *except employers.*
Section 11 of the Security Fund Act, 77 P.S. § 1061 (emphasis added). As discussed earlier, the clear impact of this language is to place the responsibility on the Security Fund for payment of claims, such that, if an employer makes a payment, it has subrogation rights against the Security Fund.
Because the *Twyman* case did not involve the Security Fund and the Security Fund Act, but is in fact more analogous to *Manolovich*, we find it inapplicable to resolution of this case.
To the extent these provisions of the Act, which use the phrase "employer **shall** pay" and the Security Fund Act, which uses the phrase "employer **may** pay" are in conflict, we are mindful that "[w]henever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both." 1 Pa. C.S. § 1933. We are also mindful that "[i]f the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail." *Id.*
We do not find these provisions irreconcilable, and we believe our interpretation gives effect to both. The Security Fund Act provisions govern the specific circumstances arising when the Security Fund becomes involved in the case.

20. Admittedly, the combination of this conclusion with our earlier conclusion that the Security Fund is neither an "insurer" nor an "employer" as defined by the Act, results in there being no party to penalize for the delays in payment. Although unfortunate in an individual situation, it appears that this is a trade-off that the Legislature decided was appropriate, so that the payment of compensation and medical benefits can be made to all claimants by the Security Fund, and its funds would not be depleted by paying penalties. The Act provides a safety-net to make sure that claimants receive the treatment and payments that each is due. To the extent that there are countervailing policies, such as those set forth by the Claimant in her brief, it is the Legislature's role, and not ours, to weigh such policies, choose which to apply, and craft statutory language to implement the chosen policy. Our role is limited to interpreting that statutory language. In this case, the language explicitly excludes the Security Fund from being an insurer for purposes of imposing penalties. We are bound by that language. Additionally, the Act clearly shifts liability from an employer to the insurer, and then, to the Security Fund. Imposing penalties effectively changes the statutory language of the Security Fund Act, 77 P.S. § 1061(3), from "Employer *may* pay an award" to "Employer *shall* pay an award." Changing that language by imposing penalties against Employer, for the conduct of the Security Fund, would require us to exceed our interpretative function. We are bound by the statutory language.

in the above-captioned matter is, hereby, reversed.

## CONCURRING AND DISSENTING OPINION BY Judge FRIEDMAN.

I agree with the majority that penalties may not be assessed against the Workers' Compensation Security Fund (Security Fund),[1] and, therefore, I concur in part with the majority opinion. However, I also dissent in part because I disagree with the majority that penalties may not be assessed against Constructo Temps, Inc. (Employer) because it obtained insurance.

Despite stating that "penalties are not workers' compensation benefits[,]" (majority op. at 57), the majority, nevertheless, begins its analysis "by examining the compensation provisions of the [Workers' Compensation] Act [ (Act)[2]], found in Article III, which is titled 'Liability and Compensation[,]'" (majority op. at 60). The majority relies on these provisions to conclude that once an employer has insured its liability with an insurance company, the insurance company has assumed all of the

employer's liability under the Act, including liability for penalties.[3] (Majority op. at 60–62.) Implicit in that conclusion is that "liability" always includes both compensation and penalties. However, the issue before us is whether the Workers' Compensation Appeal Board (WCAB) properly affirmed the workers' compensation judge's (WCJ) grant of Gregory Tennant's (Claimant) *penalty* petition against Employer; therefore, article IV, entitled Procedure, rather than article III, of the Act controls.[4]

In article IV, section 435(d)(i) of the Act provides, "*Employers* and insurers *may be penalized* . . . ."[5] Article IV, section 401 of the Act states,

> The term "employer," *when used in this article*, shall mean the employer as defined in article one of this [A]ct, or his duly authorized agent, *or his insurer if such insurer has assumed the employer's liability* or the [State Workmen's Insurance] [F]und if the employer be insured therein.

77 P.S. § 701 (emphases added). Under this definition, "employer" only can refer

---

1. In addition to relying on the holding in *Luvine v. Workers' Compensation Appeal Board (Erisco Industries)*, 881 A.2d 72 (Pa. Cmwlth.2005), I also would conclude that the Security Fund lacks the authority to pay penalties. The Security Fund was created and is authorized by its statutory language to pay only "valid claims for *compensation.*" Sections 3 and 11(1) of the Workers' Compensation Security Fund Act (Security Fund Act), Act of July 1, 1937, P.L. 2532, *as amended*, 77 P.S. §§ 1053, 1061(1) (emphasis added).

2. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4, 2501–2626.

3. As additional support for its position, the majority states that subsections 2 and 4 of section 11 of the Security Fund Act, 77 P.S. § 1061(2), (4), preclude the Insurance Commissioner from seeking payment from an employer. (Majority op. at 57.) However, the

majority's reliance on those sections is misplaced. Those sections of the Security Fund Act address the Security Fund's subrogation rights where the Security Fund has paid an award of compensation. *See* 77 P.S. § 1061(2) and (4); (Majority op. at 57, 61). This case deals with an award of *penalties*. Because, under this court's holding here and in *Luvine*, the Security Fund cannot pay an award for *penalties*, any sections of the Security Fund Act which address the Security Fund's subrogation rights are inapposite in this context.

4. Penalties are procedural measures for enforcing provisions of the Act, as well as rules, regulations and rules of procedure. *See* section 435(d) of the Act, 77 P.S. § 991(d).

5. Section 435(d)(i) of the Act, added by section 3 of the Act of February 8, 1972, P.L. 25, *as amended*, 77 P.S. § 991(d)(i) (emphasis added).

to Employer itself or to Employer's "insurer *if such insurer has assumed the employer's liability.*" 77 P.S. § 701 (emphases added). The majority and I agree that the Security Fund is not Employer's insurer for the purpose of paying penalties under article IV of the Act. Additionally, because Reliance Insurance Company (Reliance) is insolvent and is no longer able to assume Employer's liability, it no longer should be considered Employer's insurer under this definition. This leaves only Employer, and, pursuant to the plain language of section 435(d)(i) of the Act, "[e]mployers ... may be penalized." 77 P.S. § 991(d)(1). Where the Act permits penalties to be imposed on an employer *or* an insurer, and the insurer is no longer able to satisfy the liability it has assumed, the " 'claimant[ ] [should be] in the same position that [he or she] would have been in if the liability insurer had not become insolvent.' " *American States Insurance Company v. State Auto Insurance Company,* 721 A.2d 56, 62 (Pa.Super.1998) (quoting *Luko v. Lloyd's London,* 393 Pa.Super. 165, 573 A.2d 1139, 1143, *appeal denied,* 526 Pa. 636, 584 A.2d 319 (1990)). Consequently, I believe Employer may be penalized for any violation of the Act.[6]

Even assuming that the majority properly considered Article III of the Act, my reading of section 306(f.1) and this court's decision in *Twyman v. Workers' Compensation Appeal Board (Pennsylvania Department of Transportation),* 720 A.2d 780 (Pa.Cmwlth.1998), suggests that a penalty may be imposed on an employer for a failure to pay for medical treatment. Section 306(f.1) of the Act provides that "[t]he *employer* shall provide payment in accordance with this section for reasonable surgical and medical services, services rendered by physicians or other health care providers, ... *as and when needed.*" 77 P.S. § 531(1)(i) (emphasis added). In *Twyman,* this court relied on identical language to support the imposition of penalties against the *employer,* the Pennsylvania Department of Transportation (DOT).[7]

In *Twyman,* the claimant filed a penalty petition, alleging that DOT failed to reimburse him for the cost of an orthopedic bed and to pay other medical bills related to his work injury. The WCJ concluded that DOT violated the Act, and, consequently, the WCJ granted Claimant's penalty petition and assessed penalties against DOT. On appeal, the WCAB reversed based upon its conclusion that some of the bills were paid and that there was confusion between DOT's insurer, the State Workmen's Insurance Fund (SWIF), and the third party administrator, Pennsylvania Insurance Management Company (PIMCO), as to who should have paid the bills.[8]

**6.** As between a claimant who otherwise would be awarded penalties were the insurer solvent and an employer, the employer, rather than the claimant, should bear the burden of the insurer's, or its successor's, violation of the Act.

**7.** I note that, in *Twyman,* the WCJ found that DOT violated section 306(f) of the Act, 77 P.S. § 531, which has since been replaced by section 306(f.1), containing identical language.

**8.** DOT was insured for workers' compensation purposes through SWIF, and SWIF used PIMCO on all of its state cases as its third party administrator (TPA). *Twyman,* 720

A.2d at 782 n. 3. We note that one of the WCJ's findings in *Twyman* stated that DOT was self-insured; however, that same finding went on to state that the defendants in the matter, DOT *and SWIF,* were directed to pay compensation and that the claimant's medical providers billed the proper *insurer,* whose TPA was PIMCO. *Id.* at 785 n. 11. Thus, to the degree that the finding stated that DOT was self-insured, it is clear from the remainder of the opinion that this was error because DOT was insured through SWIF. I further note that SWIF is expressly included within both the definition of "insurer" and "employer" in section 401 of the Act, 77 P.S. § 701.

On appeal from the WCAB's order, this court reversed, relying on section 306(f) of the Act, which provided that "the *employer* shall provide payment ... as and when needed...." *Twyman,* 720 A.2d at 786 (emphasis in original). The court also noted its prior holding that " 'an employer has an 'absolute duty' to pay a claimant's medical bills until a [WCJ] determines that liability no longer exists.'" *Id.* (quoting *Listino v. Workmen's Compensation Appeal Board (INA Life Insurance Co.),* 659 A.2d 45, 47 (Pa.Cmwlth.1995)).[9] Additionally, in *Twyman,* the court reasoned that where a claimant or provider has complied with the Act and an employer's failure to make timely payment is caused by the insurance carrier, it would be unfair to penalize Claimant's credit rating and future treatment with his medical providers by excusing the employer's illegal delays. *See Twyman.* Finally, the court stated that under the Act, the employer, *per se,* is primarily liable for the payment of a claimant's medical expenses, and an employer should not be able to use an insurer's actions to shield the employer from its responsibility.[10] Accordingly, this court

held that it was erroneous for the WCAB to conclude that DOT did not violate the Act, and this court reinstated the WCJ's assessment of penalties *against the employer, DOT. Twyman.*

Similarly, here, the parties do not dispute that there was a violation of the Act based on a failure to timely pay for medical treatment related to Claimant's work injury. Because Employer has an absolute duty to pay for Claimant's causally related medical treatment[11] and because it is "[E]mployer, per se, [who] is primarily liable" for Claimant's medical treatment,[12] I believe the WCAB properly affirmed the WCJ's imposition of penalties against Employer. Thus, I would affirm the WCAB's order with respect to Employer.

Judge SMITH–RIBNER joins in this concurrence and dissent.

9.   I recognize that *Listino* discussed the concept of an "absolute duty" by relying on *Stonebraker v. Workmen's Compensation Appeal Board (Seven Springs Farm, Inc.),* 163 Pa. Cmwlth. 468, 641 A.2d 655 (1994), and that *Stonebraker* was abrogated by statute and correspondingly limited by *Listino.* Although an employer's duty to pay for medical treatment has now been limited in certain circumstances, both the Act and the court in *Listino* make it clear that where, as here, an employer unilaterally stops paying a claimant's medical bills based on its belief that the treatment was not causally related to the work injury, and a WCJ later determines that the employer

was liable for that treatment, the employer's duty to pay the bills is absolute, and, in such a situation, the WCJ may assess penalties. *See* 77 P.S. § 531(1)(i); *Listino.*

10.   *Twyman; see American States Insurance Company.*

11.   *Twyman; see Listino.*

12.   *Twyman,* 720 A.2d at 786; *see* section 306(f.1) of the Act, 77 P.S. § 531(1)(i) (stating that "employer shall provide payment ... for medical services ... as and when needed").