IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Resources for Human Development, :
Inc. and Gallagher Bassett Services, :
              Petitioners :
               :
      v. : No. 1408 C.D. 2023
               :
Theresa Cornish (Workers' :
Compensation Appeal Board), :
              Respondent : Argued: November 7, 2024

BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
             HONORABLE ELLEN CEISLER, Judge
             HONORABLE MATTHEW S. WOLF, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                      FILED: December 6, 2024

Resources for Human Development, Inc. (Employer) and Gallagher Bassett Services, Employer's third-party workers' compensation benefits administrator (Administrator), petition this Court for review of the October 30, 2023 order of the Workers' Compensation Appeal Board (Board) affirming the decision of a workers' compensation judge (WCJ), which granted a petition for penalties (Penalty Petition) filed by Theresa Cornish (Claimant).[1] The issue before this Court is whether the WCJ's finding that Employer violated the Workers' Compensation Act (Act)[2] was based on inadmissible hearsay evidence and, as a result, the WCJ erred in granting Claimant's Penalty Petition. After careful review, we reverse the Board, to the

---

[1] The WCJ also granted a Claim Petition that sought specific loss benefits for scarring caused by Claimant's July 12, 2018 work injury and denied Employer's Petition to Terminate Claimant's workers' compensation benefits (Termination Petition). Employer did not appeal these aspects of the WCJ's decision.

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

extent it affirmed the WCJ's decision granting the Penalty Petition. We affirm the Board's order in all other respects.[3]

## I. Background

The underlying facts of this matter are largely undisputed.[4] Following a slip and fall at work on July 12, 2018, Claimant suffered several injuries that consisted of post-concussive syndrome, occipital neuralgia, C6-7 disc protrusions, a cervical aggravation injury, cervical radiculopathy, and a lumbar strain/sprain. In a decision circulated on August 9, 2021, WCJ Rochelle Quiggle (Judge Quiggle) relevantly found that a cervical fusion surgery Claimant underwent on July 31, 2020, related to her work injury and that the cervical fusion surgery, along with post-operative office visits, imaging, bracing, therapy, and bone growth stimulation, constituted reasonable and necessary medical treatment for which Employer was liable.

On November 8, 2021, Employer filed its Termination Petition, based on the October 4, 2021 independent medical examination and report of Richard Bennett, M.D., who concluded that Claimant had fully recovered from her work injury. Claimant denied that she had fully recovered and filed a Claim Petition seeking specific loss benefits for scarring caused by the cervical fusion surgery. Claimant also filed her Penalty Petition alleging that Employer violated the Act when it denied

___

[3] Claimant also appealed the WCJ's decision to the Board, arguing that the WCJ's award of 45 weeks of specific loss benefits was inconsistent with what most WCJs would award. The Board agreed with Claimant and increased the specific loss award to 60 weeks. This issue is not part of the instant appeal.

[4] Because Employer did not appeal the WCJ's decision to grant the Claim Petition and to deny the Termination Petition, we will not address the evidence relating thereto, except to the extent necessary to resolve the issue of whether the WCJ erred in granting Claimant's Penalty Petition.

2

payment of Claimant's medical bills without first obtaining utilization review under Section 306(f.1)(6) of the Act.[5] Employer denied Claimant's allegations.[6]

In support of the Penalty Petition, Claimant presented the March 1, 2022 deposition testimony of Lyndsey Gill, the executive director of Delaware Valley Management (DVM), which oversees billing and collections for the medical provider that performed Claimant's cervical fusion surgery. In providing oversight of DVM's billing operations, Ms. Gill reviews data contained in DVM's electronic medical records system (EMRS), which includes information such as the date a bill is submitted for payment and whether payment is tendered or denied. Ms. Gill described the entries as "an automatic log that attaches to a claim within [the EMRS] system." Reproduced Record (R.R.) at 80a. Ms. Gill acknowledged that the EMRS entries to which she would testify were recorded by one of her subordinates, Carol Goodbody, but she answered affirmatively when asked if the EMRS entries were "a true and correct recitation of the events they describe[d.]" *Id.* If, for example, the EMRS indicated that DVM sent Judge Quiggle's August 9, 2021 decision to Administrator on August 20, 2021, Ms. Gill "would not" dispute the accuracy of that entry. *Id.* at 84a. In performing her job duties, Ms. Gill regularly relies on the EMRS entries made by subordinates such as Ms. Goodbody. Ms. Gill subsequently clarified that the EMRS entries are "more of a follow-up to [medical bill] submissions, so there would be some extra dates added[.]" *Id.* at 81a. Employer's counsel lodged a hearsay objection to any testimony regarding the accuracy or content of any records that Ms. Gill did not create.

---

[5] 77 P.S. § 531(6).

[6] In a separate filing, Employer requested supersedeas, which the WCJ denied on December 23, 2021.

Based on her review of the EMRS entries made by Ms. Goodbody, Ms. Gill testified that DVM billed Administrator for Claimant's cervical fusion surgery on September 2, 2020. Administrator initially denied payment for the surgery. Additional entries indicate that Ms. Goodbody sent Administrator a copy of Judge Quiggle's August 9, 2021 decision on October 20, 2021, after which DVM resubmitted the previously denied surgical bills. As of February 25, 2022, the EMRS did not reflect payment for some of the resubmitted bills. Although Ms. Gill was not responsible for submitting Claimant's medical bills to Administrator, she testified that the bills were submitted with the correct Health Care Financing Administration (HCFA) form and supporting documentation.[7] Ms. Gill stated that the EMRS revealed $129,439.00 in outstanding bills that DVM submitted to Administrator. Ms. Gill acknowledged that these bills had not been repriced in accordance with the cost containment provisions in Section 306(f.1) of the Act[8] and, therefore, the total amount owed was less than $129,439.00.

During cross-examination, Ms. Gill agreed that she had not personally spoken to any of Administrator's adjustors and that she had not personally sent Administrator any of Claimant's medical bills or reports from Claimant's medical providers. Employer's counsel questioned Ms. Gill about specific payments made

---

[7] Section 127.201(a) of the regulations promulgated by the Department of Labor and Industry (Department) mandates the use of HCFA Form 1450 or 1500, or the successor form thereof, for "[r]equests for payments of medical bills[.]" 34 Pa. Code § 127.201(a). Additionally, Section 306(f.1)(2) of the Act states that "[a]ny provider who treats an injured employe[e] shall be required to file periodic reports with the employer on a form prescribed by the [D]epartment[,]" LIBC-9. 77 P.S. § 531(2). The employer is not liable for payment until a report has been filed. Section 127.203(a) of the regulations pertaining to Workers' Compensation Medical Cost Containment, 34 Pa. Code § 127.203(a), similarly requires that a provider submit periodic reports to the employer/insurer. 34 Pa. Code § 127.203(d) states that the employer/insurer is not obligated to pay for treatment until it receives the required report.

[8] Added by the Act of July 2, 1993, P.L. 190, No. 44 (Act 44).

4

by Administrator that were not documented by the EMRS. Ms. Gill agreed that the EMRS did not have an entry for an October 5, 2021 payment issued by Administrator for services provided on November 12, 2020. Employer's counsel further questioned Ms. Gill about specific outstanding bills, including the dates of service and when DVM submitted the bills to Administrator. According to the EMRS entry made by Ms. Goodbody, a bill for services performed on March 28, 2021, was initially submitted to Administrator more than two weeks prior to that date, on March 9, 2021, and resubmitted on August 11, 2021. Ms. Gill testified that all outstanding bills were resubmitted to Administrator following Judge Quiggle's August 9, 2021 decision that related Claimant's cervical fusion surgery to the July 12, 2018 work injury.

In a decision circulated on July 18, 2022, the WCJ credited Ms. Gill's testimony, finding that DVM submitted bills to Administrator "on the forms required, together with [the] required medical documentation." R.R. at 32a. DVM resubmitted those bills following Judge Quiggle's August 9, 2021 decision. Thus, the WCJ concluded that Administrator had an obligation to process and pay bills submitted by DVM after August 9, 2021. The WCJ noted that Employer did not present evidence in contravention of Ms. Gill's testimony. Because the bills remained outstanding several months later, the WCJ concluded that Claimant met her burden of establishing a violation of the Act,[9] for which the WCJ assessed a 50% penalty against the outstanding balance, after repricing under Act 44, plus interest.

---

[9] Section 306(f.1)(5) states that providers "shall submit bills and records in accordance with" Section 306(f.1), and payment "shall be made within [30] days of receipt of such bills and records unless the employer or insurer disputes the reasonableness or necessity of the treatment provided[.]" 77 P.S. § 531(5).

The WCJ found that Claimant had not fully recovered from her work injury, based on Claimant's credible testimony and the credited testimony and opinions of her treating physicians. The WCJ also found that Claimant was entitled to 45 weeks of specific loss benefits for scarring on her neck caused by the cervical fusion surgery. After concluding that Employer unreasonably contested Claimant's Claim Petition and the Penalty Petition, the WCJ awarded attorney's fees in the amount of $5,000.00.[10]

Accordingly, the WCJ denied Employer's Termination Petition, granted Claimant's Claim Petition and Penalty Petition, assessed a penalty equal to 50% of the repriced medical bills outstanding as of March 1, 2022, and awarded attorney's fees of $5,000 to Claimant's counsel.

Employer appealed to the Board, challenging the assessment of penalties and attorney's fees. The Board rejected Employer's argument that Ms. Gill's testimony constituted inadmissible hearsay, noting that Ms. Gill established herself as the "custodian or qualified witness" of the EMRS entries made by Ms. Goodbody, whom Ms. Gill supervised, and that Ms. Gill testified that she regularly relied on the EMRS entries to perform her job duties. R.R. at 60a. Additionally, Ms. Gill testified that EMRS entries are "automatically generated" when DVM "contacted [Employer] at the time of the contact." *Id.* at 61a. The Board concluded that Ms. Gill's testimony met the "business records exception" to the hearsay rule and that the WCJ did not err in admitting her testimony. *Id.* Because Claimant met her burden of establishing that Employer violated the Act by failing to pay her medical bills within 30 days of receipt, the WCJ properly assessed a 50% penalty against Employer. Thus, the

_____

[10] The WCJ calculated the award by estimating the number of hours Claimant's counsel spent on litigation and the hourly rate set forth in the fee agreement executed by Claimant and her counsel.

Board affirmed the WCJ's assessment of penalties and attorney's fees. This appeal followed.[11]

## II. Issue

Employer argues that the WCJ's finding that Employer violated the Act, resulting in the imposition of penalties, was based on inadmissible hearsay evidence.

## III. Discussion

Pursuant to Section 435(d) of the Act,[12] a WCJ may impose penalties against an employer and insurer for violations of the Act or the Department's rules and regulations. Where there have been "unreasonable or excessive delays," the penalty may be increased to 50%.[13] A claimant who files a penalty petition bears the burden of proving the employer violated the Act or the Department's rules and regulations, and the alleged violation must appear in the record for a penalty to be appropriate. *Shuster v. Workers' Comp. Appeal Bd. (Pa. Hum. Rels. Comm'n)*, 745 A.2d 1282, 1288 (Pa. Cmwlth. 2000). If the claimant meets this burden of proof, the burden shifts to the employer to demonstrate that no violation of the Act or rules and regulations occurred. *Id.* A claimant is not automatically entitled to an award of penalties for an employer's or insurer's violation of the Act or the Department's rules and regulations. *Constructo Temps, Inc. v. Workers' Comp. Appeal Bd. (Tennant)*, 907 A.2d 52, 57 (Pa. Cmwlth. 2006). Rather, the decision to award

---

[11] Our review in workers' compensation cases is limited to determining whether violations of constitutional law or errors of law were committed, or whether necessary findings of fact were based on substantial, competent evidence. *Guthrie v. Workers' Comp. Appeal Bd. (The Travelers' Club, Inc.)*, 854 A.2d 653, 658 n.4 (Pa. Cmwlth. 2004).

Employer appears to have abandoned its challenge to the award of attorney's fees.

[12] Added by the Act of February 8, 1972, P.L. 25, 77 P.S. § 991(d).

[13] *Id.*

penalties is a matter within the WCJ's discretion. Penalties are not considered workers' compensation benefits and are used to penalize "avoidable wrongful conduct." *Id.* at 58.

Employer argues that the record in this matter fails to demonstrate that it violated the Act, justifying a penalty award, because Ms. Gill's testimony was inadmissible hearsay. Additionally, Employer argues that Claimant did not present any evidence that Claimant's treatment providers or DVM ever submitted the provider reports required by Section 306(f.1)(2) of the Act.[14]

Hearsay is an out-of-court statement made for the truth of the matter asserted. *Allesandro v. Workers' Comp. Appeal Bd. (Precision Metal Crafters, LLC)*, 972 A.2d 1245, 1250 (Pa. Cmwlth. 2009). While Commonwealth agencies are not bound by the technical rules of evidence at agency hearings, and the factfinder may receive all relevant evidence of reasonably probative value, the administrative forum has not totally abandoned all rules of evidence. 2 Pa.C.S. § 505; *Gibson v. Workers' Comp. Appeal Bd. (Armco Stainless & Alloy Prods.)*, 861 A.2d 938, 947 (Pa. 2004). Hearsay evidence, when properly objected to, is not competent evidence to support a finding of the WCJ. *Rox Coal Co. v. Workers' Comp. Appeal Bd. (Snizaski)*, 807 A.2d 906, 915 (Pa. 2002) (internal citations omitted). To be admissible, such evidence must fall within an exception to the hearsay rule. *Allesandro*, 972 A.2d 1250.

One such exception is found in Section 6108(b) of the Uniform Business Records as Evidence Act, which provides that

> [a] record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other

---

[14] 77 P.S. § 531(2).

> qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission.

42 Pa.C.S. § 6108(b).

Section 6108(b) does not require production of either the person who made the entries or the custodian of the record at the time the entries were made, or that the witness qualifying the business records has personal knowledge of the facts reported therein. *Virgo v. Workers' Comp. Appeal Bd. (Cnty. of Lehigh-Cedarbrook)*, 890 A.2d 13, 20 (Pa. Cmwlth. 2005). The authenticating witness must, however, provide "sufficient information relating to the preparation and maintenance of the records to justify a presumption of trustworthiness of the business records of a company, a sufficient basis is provided to offset the hearsay character of the evidence." *Id.* Generally, a WCJ's ruling on the admissibility of evidence may only be reversed on appeal if the WCJ committed an error of law or a clear abuse of discretion. *Coyne v. Workers' Comp. Appeal Bd. (Villanova Univ.)*, 942 A.2d 939, 950 (Pa. Cmwlth. 2008).

Having carefully reviewed Ms. Gill's testimony, we agree with Employer that her testimony does not meet the requirements of the business records exception to the hearsay rule.

Ms. Gill identified the EMRS entries as the work of Ms. Goodbody, a subordinate, whose entries Ms. Gill relied on to fulfill her duties overseeing DVM's billing and collections business. Ms. Gill indicated that she "would not" dispute the accuracy of the EMRS entries. R.R. at 84a. In addition, Ms. Gill testified that, based on the EMRS entries, Ms. Goodbody submitted bills to Administrator with the supporting documentation. Essentially, because the EMRS data indicated that

9

Claimant's medical bills were submitted on a particular date, along with the appropriate forms and documentation, Ms. Gill believed it to be fact. Problematically, at no point during her testimony did Ms. Gill discuss the "mode of preparation" employed by Ms. Goodbody when making EMRS entries or whether Ms. Goodbody made the entries "at or near the time" Claimant's medical bills were submitted by DVM to Administrator.[15]  While Ms. Gill testified that the entries created "an automatic log that attaches to a claim[,]" she also stated that "the log is more of a follow-up to those submissions, so there would be some extra dates[.]" R.R. at 80a-81a.  Beyond identifying Ms. Goodbody as the individual who entered data into the EMRS, Ms. Gill supplied no "information relating to the preparation and maintenance of the records[,]" such that a presumption of trustworthiness arises with respect to DVM's business records, providing a sufficient basis exists to offset the hearsay nature of Ms. Gill's testimony. *Virgo*, 890 A.2d at 20.  In point of fact, Ms. Gill's testimony suggests the opposite, where one of the EMRS entries made by Ms. Goodbody reflected a submission date that predated the service for which the bill was prepared.  This discrepancy is evidenced by the following exchange between Employer's counsel and Ms. Gill:

> [Employer's Counsel]:   Then you mentioned a **March 28 of 2021** date of service.  When was that bill sent to [Employer], and to what address?
>
> [Ms. Gill]: Also August 11th, 2021[,] and **initial submission of March 9th, 2021**, and sent to [P.O. Box 2831, Clinton, Iowa, 52733].

R.R. at 94a (emphasis added).

This testimony suggests that one of two scenarios occurred: (1) Ms. Goodbody submitted a bill for services on March 9, 2021, more than two weeks

---

[15] *See* 42 Pa.C.S. § 6108(b).

before those services were rendered; or (2) Ms. Goodbody entered data for the March 28, 2021 bill on a date other than March 28, 2021. While the first scenario seems unlikely, the second clearly serves to undermine the accuracy of the EMRS entries and the Board's subsequent conclusion that an EMRS entry represents contact between DVM and Administrator "at the time of the contact." R.R. at 61a. Indeed, the WCJ's summary of Ms. Gill's testimony simply ignores this inconsistency, which neither Ms. Gill nor Claimant's counsel explained or clarified, as the WCJ found that the March 28, 2021 bill was "initially submitted August 11, 2021." R.R. at 27a.

In light of the above discussion, we are unable to conclude that Ms. Gill's testimony provided the requisite information to create a presumption of the trustworthiness of DVM's business records and provide a sufficient basis to offset the hearsay character of her testimony. Because Ms. Gill's testimony constitutes inadmissible hearsay, the WCJ erred in granting Claimant's Penalty Petition.[16] Accordingly, we reverse the Board, to the extent it affirmed the WCJ's assessment of a 50% penalty. We affirm the Board's order in all other respects.

ELLEN CEISLER, Judge

---

[16] Having concluded that Ms. Gill's testimony is inadmissible hearsay, we need not address Employer's remaining argument.

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Resources for Human Development, :
Inc. and Gallagher Bassett Services, :
             Petitioners :
              :
       v. : No. 1408 C.D. 2023
              :
Theresa Cornish (Workers' :
Compensation Appeal Board), :
             Respondent :

# **O R D E R**

AND NOW, this 6th day of December, 2024, the October 30, 2023 order of the Workers' Compensation Appeal Board (Board) is hereby REVERSED, to the extent it affirmed the assessment of penalties by a workers' compensation judge against Resources for Human Development, Inc., and Gallagher Bassett Services. The Board's order is AFFIRMED in all other respects.

                                       _____

                                       ELLEN CEISLER, Judge